The document below is hereby signed.

Signed: June 11, 2020



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NATIONAL EMERGENCY MEDICINE | ) | Case No. 19-00026 |
| ASSOCIATION, | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |

MEMORANDUM DECISION AND ORDER
DISAPPROVING THE TRUSTEE'S PROPOSAL TO COLLECT
A 5% COMMISSION WITH RESPECT TO THE DISBURSEMENT
OF THE ESTATE'S SURPLUS FUNDS TO THREE NONPROFIT ENTITIES

This memorandum decision and order addresses the issue of whether Bryan Ross, the Chapter 7 trustee, is entitled to receive a 5% commission on surplus funds that are to be distributed to three nonprofit entities selected to receive the surplus funds in lieu of the debtor, which is being dissolved.

I

FACTS

The court has directed that, in lieu of the debtor, three nonprofit entities, (1) Headwaters Relief Organization Incorporated, (2) HOPE Animal-Assisted Crisis Response, and (3) Joseph's House, Inc., shall receive the surplus estate funds remaining in this case after payment of allowed claims of

creditors and allowed administrative claims.  The agreed order (Dkt. No. 79) approving the distribution of surplus funds to those three nonprofit entities ordered "that the Trustee prepare and file Articles of Dissolution on behalf of the Debtor contemporaneously with filing of final decree for this case."  However, the trustee's special counsel's fee application (Dkt. No. 76) reveals that she filed the articles of dissolution with the District of Columbia's Department of Consumer and Regulatory Affairs on February 19, 2020, and paid the $80 filing fee on that date to dissolve the debtor.  I thus will thus assume that the debtor was dissolved before distributions were to commence.

In his *Interim Trustee's Final Report* filed on March 10, 2020 (Dkt. No. 69),[1] Bryan S. Ross, the trustee in this case under Chapter 7 of the Bankruptcy Code (11 U.S.C.), proposes that he will receive a 5% commission with respect to the disbursement of surplus funds to the three nonprofit entities.  Under 11 U.S.C. § 326(a), a trustee is entitled to a commission "upon all moneys disbursed or turned over in the case by the trustee to **parties in interest, excluding the debtor,** but including holders of secured claims."  (Emphasis added.)

What is at stake if Ross is allowed a 5% commission on

---

[1] It appears that the document was called an *Interim Trustee's Final Report* because there were certain administrative claims for professional fees and expenses that were being sought and that, if allowed, would have to be paid.

2

surplus funds is that the three nonprofits would probably receive at least $5,000.00 less in the aggregate than they would otherwise.[2]  As set forth in the *Memorandum Decision and Order* of April 6, 2020, I previously viewed the issue as being whether the nonprofit entities could be treated as "parties in interest" within the meaning of 11 U.S.C. § 326(a)[3] and had not previously viewed the issue instead as whether the three nonprofit entities should be treated as standing in the shoes of the debtor.  In addition, it was not clear that there had been fair notice of the issue to those parties who might have a stake in addressing the

---

[2]  The trustee's *Report* includes a line entry indicating that net of a 5% commission, surplus funds are $130,091.09, which equals $136,937.99 in surplus funds reduced by a 5% commission of **$6,846.90**.  However, the final amount of surplus funds will turn on:

> (1) the amount of interest paid on allowed claims of creditors pursuant to 11 U.S.C. § 726(a)(5) (proposed by the *Report* to be at 2.67% per annum) which would equal almost $16,000.00 if the trustee pays claims by April 9, 2020; and

> (2) the extent to which the court grants a pending application of Ross's special counsel for allowance of an administrative claim of $19,658.20.

If those amounts are allowed and paid out, that should leave roughly $101,279.79 in surplus proceeds on hand, and a 5% commission on that would be **$5,063.99.**

[3]  *See Memorandum Decision and Order re Distribution of Surplus Funds* (Dkt. No. 45) entered on August 23, 2019.  On January 15, 2020, Ross filed his *Response to Memorandum Decision and Order re Distribution of Surplus Funds* (Dkt. No. 59) setting forth the three nonprofit entities chosen to receive the surplus funds and setting arguments in favor of treating these recipients of surplus funds as "parties in interest" such as to entitle Ross to a 5% commission on the distribution of the surplus funds.

issue. Accordingly, the *Memorandum Decision and Order* of April 6, 2020:

> (1) gave the District of Columbia, the three nonprofit entities, and the United States Trustee an opportunity to respond by April 28, 2020, regarding this issue of whether the three nonprofit entities ought to be deemed to stand in the shoes of the debtor such that no commission should be owed to Ross for distributing the surplus funds to those three nonprofit entities; and
>
> (2) gave Ross until May 15, 2020, to respond regarding this issue.

No one responded regarding this issue (except that the District of Columbia filed a response (Dkt. No. 87) indicating that it takes no position on the issue of whether Ross is entitled to a 5% commission.)

II

ANALYSIS

Ross's proposal that he receive a 5% commission on the distribution of surplus funds to the three nonprofit entities necessarily presupposes that the three nonprofit entities are not deemed to stand in the shoes of the debtor (whose receipt of distributions are not subject to a trustee's commission). If the debtor received the surplus funds and then dissolved and distributed the surplus funds to the three nonprofit entities,

Ross would not be entitled to a commission on the distribution of surplus funds to the debtor.  Instead of the debtor dissolving only *after* surplus funds are distributed, the debtor has been dissolved first, and Ross will disburse funds to the three nonprofit entities.  That ought not make a difference with respect to whether Ross is entitled to a 5% commission on disbursement of the surplus proceeds.  District of Columbia law recognizes that the debtor's assets must continue to be used for charitable purposes akin to those the debtor had.  *See* D.C. Code § 29-410.03(a) ("Property held in trust or otherwise dedicated to a charitable purpose shall not be diverted from its purpose [...] unless the nonprofit corporation obtains an appropriate order from the Superior Court to the extent required by and pursuant to the law of the District on cy pres or otherwise dealing with the

nondiversion of charitable assets.")[4] The three nonprofit entities stand in lieu of the debtor to continue serving charitable purposes. The distributions are thus similar to distributions to heirs of a deceased individual debtor, distributions that still must be treated as distributions to the debtor. The three nonprofit entities here similarly ought to be treated as standing in the shoes of the debtor (whose receipt of distributions are not subject to a trustee's commission), and thus as not subject to a commission.

III

CONCLUSION

It is thus

ORDERED that the proposal in the *Interim Trustee's Final Report* filed on March 10, 2020 (Dkt. No. 69) that the trustee,

---

[4] *See also* 26 C.F.R. § 1.501(c)(3)-1(b)(4) (regarding eligibility to be a 26 U.S.C. § 501(c)(3) organization) which provides:

> Distribution of assets on dissolution. An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal Government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized.

6

Bryan S. Ross, receive a commission of 5% with respect to the distributions of surplus funds required to be made to Headwaters Relief Organization Incorporated; HOPE Animal-Assisted Crisis Response; and Joseph's House, Inc. is disapproved.

[Signed and dated above.]

Copies to: Recipients of e-notification;

**Via BNC Mailing via USPS:**

Headwaters Relief Organization, Inc.
9400 Golden Valley Road
Golden Valley, MN 55427

Joseph's House
1730 Lanier Place NW
Washington, DC 20009

HOPE Animal-Assisted Crisis Response
1292 High Street, #182
Eugene, OR 97401